IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

JAN 14 2013

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____DEPUTY

JOHN ROBERT SIMON,                    )
                                      )
        Plaintiff,                    )
                                      )
                                      )
vs.                                   )        Case No. CIV-08-1008-W
                                      )
METROPOLITAN PROPERTY                 )
AND CASUALTY INSURANCE                )
COMPANY, a Rhode Island               )
Corporation,                          )
                                      )
        Defendant.                    )

## ORDER

Before the Court is the Defendant's Motion for Summary Judgment Pursuant to

Woodrich v. Farmers Ins. Co., (docket entry no. 202), along with the supplemental briefing

ordered by the Court. On September 17, 2012, following a thorough analysis of the parties'

submissions, the Court observed that unlike the defendant Med-Pay insurer in Woodrich v.

Farmers Insurance Co., Inc., 405 F.Supp.2d 1276 (N.D.Okla. 2004), defendant Metropolitan

Property and Casualty Insurance Company ("Met P&C") failed to hold the plaintiff harmless

for all medical expenses paid by him and his health insurance carrier, Blue Cross. The Court,

therefore, directed Met P&C to supplement its briefing to address how this distinction

affected the applicability of the Woodrich holding to the facts of this case. The plaintiff has

timely responded and the defendant has replied. Having carefully considered the parties'

original and supplemental submissions, the Court makes its determination.

## Background

The Court has summarized the background of this case several times previously, but for the sake of clarity, will again do so here. The plaintiff, John Robert Simon, brought this diversity action against Met P&C for breach of contract, bad faith or tortious breach of contract, and fraud and deceit. Mr. Simon purchased an automobile insurance policy from Met P&C (the "Policy") for the period covering 01/11/2008 to 01/11/2009. Included in the Policy is coverage for "reasonable medical expenses incurred" by Mr. Simon as the result of an automobile accident ("Med-Pay" benefits). Mr. Simon alleges Met P&C failed to pay the full amount of the "usual, customary and reasonable expenses" he incurred for the treatment of injuries he suffered in an automobile accident which occurred while he was insured under the Policy. Mr. Simon alleges that Met P&C, improperly limited its Med-Pay payment to reimbursement of the discounted rates his medical providers allegedly agreed to accept in order to belong to First Health-affiliated preferred provider organization networks ("First Health PPO"). He contends that Met P&C has no right to utilize the discount rates because it has no contract with his healthcare providers and no contract with First Health PPO. Instead Met P&C has employed third party Mitchell International, Inc. ("Mitchell") to procure the rates for medical services negotiated by First Health PPO members and to apply the discounts to Med-Pay claims of insureds such as himself.

In addition to his own claims, Mr. Simon sought to represent a multi-state class of persons similarly situated. Following extensive discovery, Mr. Simon moved for class

2

certification and the matter was heard on September 11, 2011. By order entered January 12, 2012 (docket entry no. 197), the Court denied class certification on the ground the predominance test set forth in Rule 23(b)(3) of the Federal Rules of Civil Procedure had not been met. The Court found that Mr. Simon failed to meet his burden of establishing that class-wide issues of law and fact would predominate in a nation-wide class where applicable state laws appeared to be in conflict and where material facts varied among the individual claims. The Court also found that Mr. Simon failed to meet his burden of establishing that class-wide issues of law and fact would predominate in an Oklahoma-only class. Even in a single-state class, each putative class member would be required individually to establish that his or her Med-Pay claim was reasonable under the terms of the policy and that he or she incurred damages in the form of un-reimbursed medical expenses. The Court concluded that such individual issues would all but eliminate the efficiencies the class action mechanism is intended to provide.

Following the denial of class certification, the Court conducted a status and scheduling conference to determine how best to proceed with Mr. Simon's individual claims. The Court expressed interest in the applicability of Woodrich, 405 F.Supp.2d 1276, a case which Met P&C had previously urged as persuasive authority for the denial of Mr. Simon's claims. The Court observed that the facts set forth in the class certification briefing suggested that Mr. Simon's individual claims might not be materially distinguishable from those of Woodrich, and that Woodrich deserved to be considered as possibly persuasive authority

3

with regard to his ability to recover on those individual claims. The Court, therefore, directed the parties to address whether application of Woodrich might prove dispositive of Mr. Simon's claims.

Pursuant to the Court's direction, Met P&C filed the motion here at issue asserting that Woodrich is indeed indistinguishable, and that its application to the uncontroverted material facts of this case demonstrates that it is entitled to summary judgment on all of Mr. Simon's claims. Upon careful study of the parties' briefs and evidentiary materials, the Court concluded that although the reasoning of Woodrich is sound, its facts are distinguishable from those giving rise to certain of Mr. Simon's individual claims. The Court ordered the parties to submit supplemental briefing that is now before the court along with the original summary judgment materials.

## Summary Judgment Standard

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir.1992); Manders v. State of Okl. ex rel. Dept. of Mental Health, 875 F.2d 263, 264 (10th Cir.1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

4

Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Fed.R.Civ.P. 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

## The Record Before the Court

The evidence before the Court establishes that the following facts are undisputed. On March 31, 2008, Mr. Simon sustained injury in an automobile accident. At the time the accident occurred, Mr. Simon was insured under a Met P&C policy that included Med-Pay coverage with a limit of $5,000. Under its "Automobile Medical Expense" coverage, the Policy provides coverage for "reasonable **medical expenses** incurred" by the insured "for **bodily injury** as a result of an accident involving a **motor vehicle** or **trailer** being used with

5

an automobile." "Medical expenses" are defined as "usual customary and reasonable expenses for necessary medical, surgical, x-ray, ambulance, hospital, professional nursing, funerals and dental services, including prosthetic devices." Additionally, the Policy provides for a medical expense review pursuant to which Met P&C "may use various cost containment and utilization review measures to identify excessive or inappropriate treatments and expenses. For example, [Met P&C] may use medical bill audits, case management, preferred provider discounts or other such tools."

Mr. Simon received treatment from Dr. Gene Muse and from Oklahoma Physical Therapy. Met P&C has offered evidence to establish that both Dr. Muse and Oklahoma Physical Therapy entered contractual relationships making them members of First Health PPO. As members of First Health PPO, Dr. Muse and Oklahoma Physical Therapy agreed to accept First Health PPO rates for medical care when treating patients insured by payors who were also members of First Health PPO. A First Health PPO payor's payment of the First Health PPO rates is deemed payment in full, and providers are prohibited from billing or collecting from a patient any balance beyond the First Health PPO rate. Met P&C contends it is a First Health PPO payor and is thus entitled to apply First Health PPO rates to Mr. Simon's claim for the medical services provided by Dr. Muse and Oklahoma Physical Therapy. In support of this contention, Met P&C offers evidence of both its contractual relationship with Mitchell and Mitchell's contractual relationship with First Health PPO. Whether those contracts are sufficient to establish a relationship between Met P&C and First

Health PPO is, in the Court's opinion, less than clear. Met P&C also suggests that status as a First Health PPO payor is established by the deposition testimony of Brian Jans of First Health PPO. A review of the cited portion of his deposition, however, discloses merely his statement that he knew of nothing in "the provider contracts" that required First Health PPO to directly contract with payors, or that prohibited payors from contracting with First Health PPO "through a software vendor or a third party administrator." Because the nature of the relationship between Met P&C and First Health PPO appears to be ambiguous, at best, the Court concludes that Met P&C's status as a First Health PPO payor is a subject of genuine factual and legal dispute.

It is undisputed that for his accident-related treatment, Dr. Muse and Oklahoma Physical Therapy billed Mr. Simon a total of $4,516.38. Mr. Simon instructed his medical providers to send their bills not to Met P&C, but to his health insurance carrier, Blue Cross. It appears that Blue Cross has its own PPO rates that do not necessarily align with First Health PPO rates. In its initial brief in support of its motion for summary judgment, Met P&C asserted that, based on Blue Cross PPO rates, Blue Cross paid Dr. Muse and Oklahoma Physical Therapy a total of $3,292.81. In its supplemental brief, Met P&C sought to amend that assertion, and submitted Explanations of Benefits from Blue Cross to Mr. Simon which appear to establish that Blue Cross actually paid those providers a total discounted rate of $728.40. In addition to the sums paid by Blue Cross, under the terms of his health insurance policy, Mr. Simon paid his medical providers a total of $1,243.79 for co-pays, deductibles,

7

and non-covered services. Thus, taken together, Blue Cross and Mr. Simon paid to the providers a total of $1972.19.[1]

In June 2008, after his treatment concluded, Mr. Simon submitted his medical bills to Met P&C. Met P&C submitted checks to Mr. Simon totaling $1,766.05, for reimbursement of his medical expenses under its Med-Pay coverage. Met P&C's payment to Mr. Simon was calculated on the basis of First Health PPO's rates. Neither Dr. Muse nor Oklahoma Physical Therapy pursued collection activity against Mr. Simon, and neither billed him for any of the difference between their original invoices and the amounts they were actually paid by Mr. Simon and Blue Cross. Neither of Mr. Simon's medical providers reported him to be delinquent to any credit reporting bureau.

Met P&C asserts that had Mr. Simon instructed his medical providers to bill Met P&C rather than Blue Cross, he would have incurred no deductibles or co-pays because none were due under his Med-Pay coverage. Additionally, although it is not material to this motion, Met P&C points out that Mr. Simon had uninsured motorist ("UM") coverage with Met P&C, and that under that coverage, Met P&C paid Mr. Simon $4,516.38, of which Mr. Simon paid $438.01 back to Blue Cross. Met P&C has pointed to nothing in the Policy that

---

[1]In its supplemental brief, Met P&C, without explanation, altered its calculation of the sum Mr. Simon paid for co-pays, deductibles and non-covered items from $1,243.79 to $1,223.59. This alteration results in a calculation of $1,951.99 in total medical expenses paid by Mr. Simon and Blue Cross. As Met P&C concedes that even accepting its calculations, it failed to reimburse Mr. Simon for the entirety of his expenses, the Court finds the discrepancy to be immaterial to its ruling.

8

required Mr. Simon to submit his bills to Met P&C in advance or in lieu of submitting them to Blue Cross.

## Discussion

All of Mr. Simon's claims arise out of his contention that under the Policy, Met P&C was bound to pay the full "sticker price" of his medical providers' services which, he claims, represented his "reasonable medical expenses incurred." Met P&C counters that Mr. Simon's position is contrary to Woodrich wherein the court held that a Med-Pay insured receives the benefit of his bargain when the insurer pays "what the medical providers actually agreed to charge, not the list price or 'sticker price.'" Id. at 1279.

In Woodrich, the named insured on a Farmers Insurance Company automobile policy brought suit alleging that Farmers breached its agreement to "pay reasonable expenses for necessary medical services furnished within two years from the date of the accident because of bodily injury sustained by an insured person." Woodrich at 1277. "Reasonable expenses" were defined as "expenses which are usual and customary for necessary medical services in the county in which those services are provided." Id. at 1277-78. "Necessary medical services" were defined by the policy as "medical services which are usual and customary for treatment of the injury, including the number or duration of treatments, in the county in which those services are provided." Id. at 1277. The plaintiff submitted to Farmers medical bills for treatment of injuries he sustained in an automobile accident which occurred during the policy period. The face amount of his bills totaled $15,429.28. In addition to his Med-

9

Pay coverage, the plaintiff had health insurance through United Healthcare. Many of the plaintiff's medical bills were submitted to United Healthcare as well as Farmers, and a number of the plaintiff's medical providers accepted, as payment in full, discounted rates paid by United Healthcare. Pursuant to those discounts, the total amount accepted by the providers as full payment amounted to no more than $14,131.68. Farmers reimbursed the plaintiff $14,430.86. Thus, Farmers paid the plaintiff slightly more than his medical providers accepted as full payment. The plaintiff brought suit arguing that Farmers breached the Med-Pay policy by paying him less than the full face amount of his submitted medical bills. He claimed that by paying not the face amount of the medical bills as rendered, but rather the discounted rates accepted by the medical providers, Farmers had violated the "collateral source rule" and deprived him of the benefit of his bargain.

The court rejected the plaintiff's contentions. Examining the policy language, it concluded that "reasonable expenses for necessary medical services," plainly meant that the plaintiff's "recoverable medical 'expense' is no more than the provider actually agreed to accept as full payment." Id. at 1279. The court also concluded that collateral source rule is limited to "common law tort actions to determine the amount of compensatory damages which will compensate the injured party of all the detriment proximately caused." Id. It has no applicability to determining the parties' rights and obligations under a first party insurance claim.

10

Met P&C asserts that pursuant to Woodrich, it performed all its obligations under the Policy when it paid Mr. Simon the amount it contends his medical providers had agreed to accept as members of First Health PPO, and that it is, therefore, entitled to judgment on all Mr. Simon's claims as a matter of law. The Court finds Woodrich's reasoning to be sound, persuasive, and entirely consistent with Oklahoma law. The case compels rejection of Mr. Simon's claim to recover sums in excess of what his medical providers accepted from him and Blue Cross, as payment in full. Consistent with Woodrich, this Court concludes that the Policy reflects the parties' clear intent that Met P&C indemnify or reimburse Mr. Simon only for sums actually paid by him or on his behalf. To the extent Mr. Simon seeks to recover the "sticker price" of his medical bills as opposed to indemnification for sums he and Blue Cross expended, Met P&C is entitled to judgment as a matter of law.

As pointed out by the Court in its September 17, 2012 order, the facts of this case present issues that did not arise in Woodrich. In Woodrich, the Med-Pay insurer reimbursed the insured for the *entire* amount he and his health insurer paid to his medical providers. Here, it is undisputed that Met P&C failed to reimburse Mr. Simon for the entire amount accepted by Dr. Muse and Oklahoma Physical Therapy as payment in full. Although it appears from the evidence offered by Met P&C in its supplemental materials that the unreimbursed sum is fairly minimal, that fact is immaterial to the Court's determination whether Met P&C has established, as a matter of law, that it has performed all its obligations under the Policy.

11

Met P&C argues that its obligation under the Policy to pay all "reasonable medical expenses incurred," should be interpreted to mean that it is liable only for what Mr. Simon was legally obligated to pay. It then asserts that, as a matter of law, Mr. Simon was legally obligated to pay only what his providers had agreed to accept as members of the First Health PPO. In addition, it suggests that, as a matter of law, only First Health PPO rates were "reasonable." The Court is unpersuaded. At its heart, the Policy obligates Met P&C to indemnify and reimburse Mr. Simon for all reasonable medical charges paid by him or on his behalf. If Met P&C intended to limit its coverage to the rates charged by a particular PPO, it could have drafted the Policy to clearly and unambiguously provide such. Met P&C has pointed the Court to nothing in the Policy that clearly makes full reimbursement of otherwise reasonable medical expenses contingent upon the insured's submission of medical bills for Med-Pay review prior submitting those bills to his health insurer or paying them out of his own pocket. Moreover, Met P&C has failed to address why First Health PPO rates should be entitled to priority or preference over the Blue Cross PPO rates that Mr. Simon's medical providers apparently also agreed to accept. Finally, Met P&C has failed to proffer evidence sufficient to establish that it is, as a matter of law, a First Health PPO payor contractually entitled to require Dr. Muse and Oklahoma Physical Therapy to accept as payment in full, First Health PPO rates. Even assuming, for the sake of argument, that Met P&C is an authorized First Health PPO payor, the Court has been directed to nothing suggesting payor status within one PPO network excuses a Med-Pay insurer from reimbursing an insured's

12

reasonable medical expenses payed by a health insurer belonging to a different PPO network.

As the party against whom summary judgment is sought, Mr. Simon is entitled to the benefit of every favorable inference available to be drawn from the record. The Court is persuaded that reasonable persons could find in Mr. Simon's favor on the numerous issues of material fact that remain subject to dispute. Therefore, summary judgment must be denied Met P&C on all matters other than Mr. Simon's claim to recover the full "sticker price" of the medical services billed by Dr. Muse and Oklahoma Physical Therapy.

As an aside, the Court notes that the fact-intensive analysis required to dispose of this motion serves to illustrate that class action treatment of claims such as Mr. Simon's is untenable. The potential involvement of multiple insurers, multiple medical providers, and multiple discount rates, means each class member's claim would require extensive discovery by the parties and scrutiny by the Court to determine the actual expenses incurred, as well as their reasonableness. In addition, questions regarding representations made to individual class members and their reliance thereon would make class treatment of fraud and deceit claims unmanageable.

## CONCLUSION

Although Met P&C has established that Mr. Simon's claim for the full "sticker price" of his medical bills is untenable as a matter of law, it has failed to establish, as a matter of law, that it fully performed its obligations under the Policy. Accordingly the Court:

13

(1) GRANTS Met P&C partial summary judgment with respect to Mr. Simon's claim

for payment of medical expenses in excess of the sums actually remitted by him and by Blue

Cross to Dr. Muse and Oklahoma Physical Therapy;

(2) DENIES Met P&C's motion in all other respects;

(3) INFORMS the parties that this matter will be set on an upcoming status docket in

order to establish a schedule for trial.

ENTERED this _14th_ day of January, 2013.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

14